**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

MARIA ANGIE FUENTES,           §
                               §
        Plaintiff,             §
                               §
v.                             §        NO. 3:04-CV-1859-AH
                               §
JOHN POTTER,                   §
Postmaster General of the      §
United States Postal Service   §
        Defendant.             §

**MEMORANDUM OPINION AND ORDER**

Pursuant to the written consents of the parties and the District Court's order of transfer of

September 9, 2005, came on to be considered Defendant John Potter's motion for summary

judgment filed on February 28, 2006, together with the respective briefs and appendices

submitted and the court finds and orders as follows:

**Factual Background**

Plaintiff, a Hispanic female of Mexican origin over the age of 40, has been employed by

the USPS for over 30 years.  She brings the present action under Title VII of the Civil Rights

Act, 42 U.S.C. § 2002e *et seq.*, alleging employment discrimination on the basis of race, national

origin, and retaliation, and under the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621 *et seq.*, alleging discrimination on the basis of age.

Plaintiff became manager of the injury compensation unit for the Dallas District of the

United States Postal Service ("USPS") in September of 1993.  (App.  II  to Pl.'s Resp.  64.)

Plaintiff directly reported to the manager of human resources, who, at the time of her

appointment, was Theodore Faulkner.  During his tenure as Ms.  Fuentes' supervisor, Mr.

Faulkner observed that Plaintiff failed to properly train her employees and worked long hours because she failed to delegate work.  (App.  to Def.'s Mem.  Supp.  Sum.  J.  1-2.)  However, shortly before leaving his position in 1999, Mr.  Faulkner nominated Plaintiff for a "Spot award," a discretionary merit-based monetary award.  (App.  to Def.'s Mem.  Supp.  Sum.  J. 49.)  Ultimately, Plaintiff did not receive the award.  (App.  II  to Pl.'s Resp.  49.)

In February of 1999, Mr.  Faulkner was replaced by Thelma Pamplin, a black female. (App.  to Def.'s Mem.  Supp.  Sum.  J.  4.)  In July of 1999, Ms.  Pamplin "detailed" a human resources specialist from the Los Angeles District, Mary Young, a black female, to the injury compensation department to assist with the limited duty program.  (App.  to Def.'s Mem.  Supp. Sum.  J.  5, 76-77.)  Around this same time, Ms.  Pamplin also requested that the Southwest Injury Compensation Unit conduct a program review ("program review" or "audit") of the unit due to report of problems within the unit.  (App.  to Def.'s Mem.  Supp.  Sum.  J.  4-5.)   The review was conducted during the week of August 16, 1999.  (App.  to Def.'s Mem.  Supp.  Sum. J.  10.)  Plaintiff was interviewed as part of the audit.  (App.  to Def.'s Mem.  Supp.  Sum.  J. 11.)  The audit revealed that the unit was appropriately staffed based on its current caseload but that there was a need for clerical assistance.  (App.  to Def.'s Mem.  Supp.  Sum.  J.  11,13.) Lower level employees within the unit complained of lack of training, low morale, a backlog of cases and confusing procedures for handling claims.  (App.  to Def.'s Mem.  Supp.  Sum.  J.  12-26.)

After the results of the audit were received, Ms.  Pamplin sought guidance from a USPS labor relations specialist regarding disciplining Plaintiff in response to the audit.  (App.  II  to Pl.'s Resp.  2.)  The specialist, JD McAlester, stated that many of the deficiencies noted in the

audit findings were not within Plaintiff's immediate control as manager.   (App.  II  to Pl.'s Resp.  2.)  Because Plaintiff have no prior record of formal discipline, he recommended placing Plaintiff on a Performance Improvement Plan ("PIP").  (App.  II  to Pl.'s Resp.  2.)   However, Ms.  Pamplin directed Mr.  McAlester to draft a notice of proposed reduction in grade to be issued to Plaintiff, although she never issued the notice.  (App.  II  to Pl.'s Resp.  4-5, 25-26.) Instead, on November 19, 1999, she notified Plaintiff that she was being "detailed" to the administrative services department in the Dallas District.  (App.  I  to Pl.'s Resp.  13.)  Plaintiff was never placed on a PIP, which would have identified her deficiencies in writing.  (App.  I  to Pl.'s Resp.  13.)  In her new detail, Plaintiff did not supervise any employees and had no other managerial duties.  (App.  I  to Pl.'s Resp.  13.)   Plaintiff worked in this detail for one year and ten months.  (App.  I  to Pl.'s Resp.  14.)

The first person to serve as manager of injury compensation in Plaintiff's absence was Mary Young.  (App.  II  to Pl.'s Resp.  56; App.  to Def.'s Mem.  Supp.  Sum.  J.  78.)  After serving for approximately one month, she was replaced by Wanda Hull, a white woman.  (App. II  to Pl.'s Resp.  56.)  While Plaintiff was on detail in the administrative services department, numerous employees were assigned to work as acting managers of the injury compensation department.  (App.  to Def.'s Mem.  Supp.  Sum.  J.  113.)

In January of 2000, Denise Cameron, a black female, replaced Ms.  Pamplin as manger of human resources.  (App.  to Def.'s Mem.  Supp.  Sum.  J.  113.)

 On March 21, 2000, Plaintiff filed a worker's compensation claim due to a hand injury as well as due to employment-related stress and depression.  (App.  to Def.'s Mem.  Supp.  Sum. J.  34-37.)  Plaintiff's injury compensation paperwork was not processed for over four months.

(App. to Def.'s Mem. Supp. Sum. J. 34-37.)

Two days later, on March 23, 2000, Plaintiff submitted a 13-page, single spaced letter to Carol Garvey, Southwest area human resources manager, and George Lopez, vice president of Southwest area operations, wherein she made allegations similar to those contained in her federal complaint. (App. to Def.'s Mem. Supp. Sum. J. 81- 93.)

On October 31, 2000, Plaintiff filed an EEO complaint alleging that the Southwest area office discriminated against her based on her race, gender and national origin and retaliated against her by delaying the processing of her worker's compensation paperwork. (App. to Def.'s Mem. Supp. Sum. J. 160-63.)

Plaintiff was on workers's compensation leave for an extended period of time in 2000 and 2001.[1]  On September 12, 2001, Denise Cameron notified Plaintiff via letter to return to work on September 17, 2001. (App. I to Pl.'s Resp. 14.)  Upon reporting to work, Plaintiff gave Ms. Cameron a note from Dr. Joyce Sichel, Ph.D., a psychologist, wherein Dr. Sichel indicated that she had been treating Plaintiff for work-related depression and anxiety for over two years. (App. to Def.'s Mem. Supp. Sum. J. 118.)  Consequently, Dr. Sichel opined that Plaintiff was unable to return to work as manager of injury compensation. (App. to Def.'s Mem. Supp. Sum. J. 118.)  Plaintiff requested to remain in the administrative services unit until her EEO complaint or injury claims were resolved, but Ms. Cameron refused her request. (App. I to Pl.'s Resp. 14; App. to Def.'s Mem. Supp. Sum. J. 114.)

On November 1, 2001, Plaintiff filed another EEO complaint wherein she alleged that Defendant had discriminated against her based on her race, gender and national origin and had

_____

[1] In is difficult to determine from the record the exact dates that Plaintiff was on leave.

retaliated against her on September 12, 2001, when she was presented with a letter directing her to report to another duty assignment without appeal rights and on November 16, 2001, when the Defendant posted Plaintiff's position as manager of injury comempensation as open for bidding. (App. to Def.'s Mem. Supp. Sum. J. 164-67.)

On November 14, 2001, Plaintiff's job position was posted on the USPS internet site as "vacant." (App. I to Pl.'s Resp. 14; App. to Def.'s Mem. Supp. Sum. J. 115.) The job was posted for at least 5 days within which time no eligible employees bid for the job. (App. I to Pl.'s Resp. 14; App. to Def.'s Mem. Supp. Sum. J. 115.)

Plaintiff was offered, in writing, the position of vehicle supplies supervisor on December 4, 2001, but declined the offer. (App. to Def.'s Mem. Supp. Sum. J. 122.) On April 24, 2002, the Office of Workers Compensation ("OWC") notified her that it found the job to be suitable. (App. to Def.'s Mem. Supp. Sum. J. 122.) On May 15, 2002, she wrote a letter indicating her disagreement with the OWC's findings. (App. to Def.'s Mem. Supp. Sum. J. 122.) On June 27, 2002, the OWC informed Plaintiff that the job was suitable, despite her objections. (App. to Def.'s Mem. Supp. Sum. J. 122.) She disagreed again on July 11, 2002, and submitted a letter from her doctor releasing her for work with no restrictions. (App. to Def.'s Mem. Supp. Sum. J. 122.) On August 9, 2002, the OCW recommended that a notice of proposal to terminate future compensation benefits be issued because Plaintiff had not returned to work despite her medical clearance. (App. to Def.'s Mem. Supp. Sum. J. 122.)

During the months of July through October 2002, while Plaintiff had still not returned to work, Ms. Cameron required Plaintiff to undergo several examinations meant to gauge her ability to return to work, which included two fitness-for-duty examinations and

neuropsychological testing.  (App.  I  to Pl.'s Resp.  15; App.  to Def.'s Mem.  Supp.  Sum.  J. 115.)

Plaintiff filed an EEO complaint against Ms.  Cameron and Mr.  January on October 23, 2002, alleging that they had improperly refused to permit her to return to work.  (App.  I  to Pl.'s Resp.  16.)

Plaintiff eventually returned to work in mid-November of 2002.  (App.  I  to Pl.'s Resp. 15; App.  to Def.'s Mem.  Supp.  Sum.  J.  115.)  Although she was returned to the injury compensation department and continued to hold the title of manager, she was not asked to perform the duties of manager of the unit.  Instead, she was tasked to lead several projects within the unit.  (App.  I  to Pl.'s Resp.  16-17; App.  to Def.'s Mem.  Supp.  Sum.  J.  115-16.)  During this time, Freddy Evans, a black woman, was also recognized as the manager of injury compensation and occupied the office formerly assigned to Plaintiff.  (App.  II  to Pl.'s Resp. 141-42, 144.)  During the years of 2004-2005, Plaintiff reported to Ms.  Evans who also evaluated her performance.  (App.  II  to Pl.'s Resp.  141.)

On April 1, 2006, Plaintiff resumed the duties of managing the injury compensation unit. (App.  II  to Pl.'s Resp.  72.)  Shortly after she returned to this position the number of staff members in the department was reduced from twelve to six.  (App.  II  to Pl.'s Resp.  72.)

**Summary Judgment–Standard of Review**

To prevail on a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505,

2509-10 (1986).  The materiality of facts is determined by substantive law.  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law.  *See Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994).  Once the moving party has made an initial showing, the party opposing the motion for summary judgment may not merely rely on his pleadings, but must come forward with competent evidentiary materials that establish a genuine fact issue. *Anderson*, 477 U.S. at 256-257, 106 S. Ct. at 2514; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986).  Neither conclusory allegations nor hearsay statements are competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the opponent's claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The court must resolve any factual controversies in favor of the non-moving party.  *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996).  Thus, in reviewing all of the evidence, the court must consider it in a light most favorable to Ms. Fuentes' claims, drawing all factual inferences therefrom and making all credibility determinations related therefrom in his favor.  However, summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322; 106 S. Ct. 2548, 2552.

**Discrimination Based on Race and National Origin**

Plaintiff alleges that Defendant, through its employees Thelma Pamplin, Denise Cameron

7

and Carl January,[2] removed her from her position of manager of injury compensation and reassigned her to several non-managerial positions in a concerted attempt to hire and promote black individuals at the expense of all other races and national origins.

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff alleging that she suffered employment discrimination based on race or national origin must first establish a *prima facie* case of discrimination.[3]  The plaintiff must show that: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action by the employer; and (4) she was replaced by someone outside her race or national origin. *See, e.g.*, *Turner v. Baylor Richardson Medical Center*, __ F3d. __, 2007 WL 122003, at *4 (5th Cir.  Jan.  19, 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973)).

When the plaintiff makes a prima facie showing, the burden then shifts to the employer to

_____

[2] Carl January served as the Dallas district manager for the USPS during the time periods relevant to this suit.

[3] If Plaintiff brought forth direct evidence of intentional discrimination, use of the *McDonnell Douglas* framework would not be appropriate.  While Plaintiff asserts that Thelma Pamplin made several comments regarding her national origin, these remarks does not meet the standard for "direct evidence" of discrimination, as the term is defined in the circuit.  *See, e.g.*, *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).

Likewise, Plaintiff alleges that Defendant engaged in a "pattern and practice"of intentional discrimination based on race, national origin and age, and she devotes a significant portion of her argument to claims of discrimination made by *other* employees.  While the United States Supreme Court has articulated a separate standard of proof that is applicable to "pattern and practice" claims of discrimination, *see International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360, 97 S. Ct. 1843, 1867 (1977), the Fifth Circuit has held that this separate method of proof is available only to a plaintiff who bring her claims of discrimination as part of a class action suit.  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355-56 (5th Cir. 2001).  Therefore, Plaintiff must prove a *prima facie* case of discrimination under the *McDonell Douglas* framework, and evidence related to discrimination against other employees is not relevant.

articulate a legitimate, nondiscriminatory reason for its employment action.  *Turner*, 2007 WL

122003, at *4.  If the employer meets its burden of production, the plaintiff then bears the burden

of producing substantial evidence that the employer's proffered reason is pretext for

discrimination.  *Id.*  To carry this burden, the plaintiff must rebut each nondiscriminatory or

nonretaliatory reason articulated by the employer.  *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th

Cir. 2003).

Defendant concedes the Plaintiff has produced evidence to satisfy the first two elements

of the *McDonnell Douglas* framework.  She is a Hispanic female of Mexican origin who has

worked for the Postal Service for over 30 years, and has served as manager of injury

compensation since 1993.  Defendant, however, argues that Plaintiff has failed to show that she

suffered an adverse employment action–as that term has been defined in this circuit–and has

failed to show that she was replaced by a person outside her protected class.

The Fifth Circuit Court of Appeals has narrowly construed the term "adverse

employment action" to include "only ultimate employment decisions such as hiring, granting

leave, discharging, promoting and compensating."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272,

282 (5th Cir. 2004).  A discriminatory reassignment may also satisfy the foregoing rubric when

it involves a "major change in compensation, duties, and responsibilities."  *Pegram*, 361 F.3d at

282 n.8.

Plaintiff has not alleged that Defendant failed to promote her, denied her leave or

discharged her.  However, she alleges that in 1999 she was removed from her position as

manager of injury compensation and was reassigned to work a series of "details" for the next six

years.  Mary Young, a black female, was the first person to replace Plaintiff as acting manager of

injury compensation.  While on detail, Plaintiff alleges that her duties were reduced because she no longer was responsible for managing any employees.  Additionally, while she admits that her pay grade was not affected by these assignments, she alleges that, due to her lack of managerial duties, she was not eligible for merit-based "Spot awards."[4]  Defendant admits that, from 1999 to the present, Plaintiff has retained the title of manager of injury compensation but has had her duties modified, no longer occupies the office previously assigner to her as manager, and had her performance evaluated by a woman serving as the acting manager of injury compensation, Freddie Evans.  (App.  to Def.'s Mem.  Supp.  Sum.  J.  141-44.)

In an abundance of caution, the Court will assume that Plaintiff has satisfied the third prong of the *McDonnell Douglas* framework.  The court will likewise assume that Plaintiff has satisfied the fourth prong of the framework, as she presented evidence that Mary Young, a black female, served as acting manager of injury compensation after Plaintiff was detailed out of the unit.  Therefore, the court assumes that Plaintiff has presented sufficient evidence to form a *prima facie* case of employment discrimination.

The court now turns to Defendant's proffered legitimate, non-discriminatory reasons for re-assigning Plaintiff from her position as manger of injury compensation to various non-managerial positions at the USPS Dallas facility.

---

[4]  Plaintiff's numerous other allegations, including: failure to provide adequate supplies, forced overtime, failure to permit her to "participate" in the audit of her unit, improper advertisement of her position as "open" for bidding, failure to compensate her for travel expenses, requiring her to submit to several fitness-for-duty examinations, and failure to allow her to return to the office she previously occupied while serving as manager of the injury compensation unit, do not rise to the level of "adverse employment actions."  *See Pegram*, 361 F.3d at 282.

Defendant asserts that Plaintiff was originally detailed out of her position as manager of injury compensation due to significant performance problems, including poor relationships with her staff and other managers as well as a failure to take responsibility for any of the deficiencies pointed out in the audit of the injury compensation unit.  Defendant submitted a copy of the audit results, as well as declarations from Plaintiff's supervisors, including Thelma Pamplin, and numerous lower-level employees, which show that employees in the injury compensation unit complained of a lack of training and had low morale due to Ms. Fuentes' poor inter-personal skills.  (App. to Def.'s Mem. Supp. Sum. J. 1-33, 124-38.)  Ms. Pamplin also stated that removing Plaintiff as manager of injury compensation was necessary after the audit because Plaintiff refused to acknowledge deficiencies in her running of the department and would have been an impediment to the implementation of measures recommended by the audit team.  (App. to Def.'s Mem. Supp. Sum. J. 5.)  Furthermore, Denise Cameron explained that, once Plaintiff returned from her extended injury leave, she was tasked to lead several teams within the injury compensation department because these assignments best matched her knowledge, skills and abilities.  (App. to Def.'s Mem. Supp. Sum. J. 115-16.)

Plaintiff has not responded with any evidence to show that Defendant's proffered legitimate explanation for her initial reassignment and later return to the department with altered duties was a pretext for discrimination.  She merely reasserts the same arguments set forth in her original response to Defendant's motion for summary judgment.  This failure to offer specific evidence refuting the factual allegations underlying Defendant's reasons for  reassigning her and altering her duties makes the granting of summary judgment on Plaintiff's claims of race and national origin claims appropriate.  *See Turner*, 2007 WL 122003, at *5.

11

**Retaliation**

Plaintiff also asserts that Defendant retaliated against her for engaging in protected activity.  In her complaint, she pinpoints four allegedly retaliatory actions: (1)  Defendant intentionally delayed the processing of her worker's compensation claim after she filed her first EEO complaint, (2) Defendant removed Plaintiff from her managerial position and directed her to another duty assignment without any appeal rights, (3) Defendant did not immediately permit her to return to work after the doctor cleared her for full work duty, and (4) Defendant did not reimburse her for unspecified travel expenses.

To establish a prima facie case of Title VII retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal link existed between the protected activity and the adverse action.  *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir.2002).  The Fifth Circuit has defined "protected activity" as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."  *Ackel v. Nat'l Communc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).  Likewise, the United States Supreme Court recently resolved a circuit split regarding the definition of "adverse employment action" and clarified that an action may be deemed "adverse" where "a reasonable employee would have found the challenged action materially adverse, which....means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Ry. Co. v. White*, __U.S.__, 126 S. Ct. 2405, 2415 (2006).  Regarding the third element of the *prima facie* case, the Fifth Circuit has not interpreted the causation standard to be a "but for" test and therefore a plaintiff  "need not prove that her protected activity was the sole

factor motivating the employer's challenged decision." *Gee*, 289 F.3d at 345.

In this case, Plaintiff has offered some evidence regarding the first two prongs of her *prima facie* case but has offered scant evidence to establish a causal link between her protected activity and the allegedly adverse employment actions taken by Defendant.  Indeed, Plaintiff has merely expressed a subjective belief that the aforementioned incidences were retaliatory.  Her subjective belief, without more, is not sufficient to survive summary judgment. *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 651 (5th Cir. 2004).

Further, even if Plaintiff had established a *prima facie* case of retaliation, Defendant has produced evidence regarding legitimate, non-retaliatory reasons for its actions and Plaintiff has not demonstrated that Defendant's proffered explanations are pretext for discrimination.  In reference to Plaintiff's first allegation, Defendant admits that there was a significant delay in processing Plaintiff's injury compensation paperwork.  However, Defendant asserts that such delay was the result of a paperwork filing error, and that when Plaintiff pointed out this error to Joe Hopkins, a labor relations specialist, he immediately investigated the delay, found the paperwork, and hand-delivered it to the injury compensation office.  (App.  to Def.'s Mem. Supp.  Sum.  J.  139.)  Regarding Plaintiff's claims that she was forced to take a permanent position with no appeal rights, Defendant provided evidence showing that Plaintiff was offered a permanent position in the vehicle services department due to her doctor's order that she not work as manager of injury compensation, but that Plaintiff protested the job offer and chose to remain off work up until her doctor cleared her for full work duty.  (App.  to Def.'s Mem.  Supp.  Sum. J.  122.)  In response to Plaintiff's next allegation that Defendant delayed her return to work from injury leave, Denise Cameron stated that Plaintiff remained off work for several months

13

after having been fully cleared to return because company regulations allowed Ms.  Cameron to require Plaintiff to submit to a fitness-for-duty examination.  (App.  to Def.'s Mem.  Supp.  Sum. J.  115.)  Finally, in reference to Plaintiff's claim that Defendant failed to reimburse her for travel expenses, Defendant submitted documentation showing Plaintiff's recent reimbursements for travel expenses.  (App.  to Def.'s Mem.  Supp.  Sum.  J.  168-69.)

**Age Discrimination**

Finally, Plaintiff alleges that Defendant discriminated against her based on her age. However, Plaintiff has wholly failed to establish a *prima facie* case of discrimination based on age.  *See Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005) (applying the *McDonnell Douglas* framework to an age discrimination claim).  While Plaintiff alleges that she suffered age discrimination, the only evidence she produced to support this claim are statements from USPS employees wherein they claim to have observed or personally experienced age discrimination.  However, only one of these employees alleges that *Plaintiff* was the subject of age discrimination, and his claim is wholly conclusory and contradicted by the record.  (App.  II to Pl.'s Resp.  76-77; App.  to Def.'s Mem.  Supp.  Sum.  J.  116.)  Therefore, Plaintiff's final claim is without merit.[5]

**IT IS, THEREFORE, ORDERED** that Defendant's motion for summary judgment is granted.

---

[5]    In her original complaint, Plaintiff also makes conclusory hostile environment and failure to promote claims.  However, she never addresses theses theories of discrimination in her memorandum in response to Defendant's motion for summary judgment.  Therefore, summary judgment is granted on these claims, as they are wholly conclusory.  *See Turner*, 2007 WL 122003, at *5 ("Conclusory statements are not competent evidence to defeat summary judgment").

Signed this 28th day of February, 2007.

_____
Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE